**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHEILA SPENILLO<br>750 Willow Ave<br>Langhorne, PA 19047<br><br>Plaintiff,<br>v.<br><br>ULTA SALON COSMETIC<br>& FRAGRANCE, INC.<br>1000 Remington Blvd, #120<br>Bolingbrook, IL 60440<br><br>Defendant | : | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Sheila Spenillo (hereinafter "Plaintiff") against Ulta Salon Cosmetic & Fragrance, Inc. ("Defendant"). Plaintiff asserts violations of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 et seq.), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff contends that she was subjected to discriminatory mistreatment while employed with Defendant (as explained *infra*) and that she was unlawfully terminated from her employment.

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the PHRA once properly administratively exhausted. Plaintiff was however required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA claims will mirror identically her ADEA claims, and they are analyzed identically in the Third Circuit as well, with the exception of available damages.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Plaintiff's future state claims are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

5. Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under Title VII within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual residing at the address set forth in the caption.

8. Defendant is a large corporation that sells makeup, cosmetics, hair products, and cosmetology services at more than 1500 locations across the United States.

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a fifty-seven (57) year-old female.

12. Plaintiff was employed by Defendant for approximately 19 years (commencing on March 7, 2007) until being terminated on or about April 7, 2026.

13. Plaintiff physically worked for Defendant at its location at 2424 Lincoln Hwy, Ste. 150, Langhorne, PA 19057.

14. Plaintiff held the position of General Manager throughout her employment with Defendant.

15. As General Manager, Plaintiff was responsible for scheduling and organizing each employee's time spent on certain duties into segments on their individual schedules, a task which become relevant when analyzing the reason for Plaintiff's termination (discussed *infra*).

16. Plaintiff's supervisor was District Manager, Jocelyn Epps ("Epps").

17. Plaintiff worked alongside a co-manager, Shannon McCormick-Gould ("McCormick," 31), and managers from other departments as well, including Melony Groom ("Groom," 26 – Sales Manager), Ashley Bresnen ("Bresnen," 32 – Merchandise Manager), and Amber Bock ("Bock," 38 – Operations Manager).

18. The Regional Vice President of Stores (for the Mideast region) was Melinda Black ("Black").

19. The Human Resources ("HR") Director was Dan McGrath ("McGrath").

20. The Regional Loss Prevention ("LP") Manager was Craig Jackson ("Jackson").

21. The LP Department was responsible for improving Defendant's profitability, such as by preventing theft, preventing and/or remedying waste of company resources by employees, and improving operating processes. HR worked together with the LP Department in making decisions to terminate/discipline employees for waste and/or theft, including time theft.

22. Defendant's locations are grouped into Regions of 250 stores each, and those Regions are divided into Districts of 10-15 stores each.

23. By way of example, the location in which Plaintiff worked was in District 2505 of the Mideast Region.

24. Plaintiff's location was known internally within Defendant as a "Top 25" and "A-Volume" store, meaning that it was among the top 25 performing stores in the Region and had exceptionally high sales.

25. Upon information and belief, Plaintiff was the oldest store manager across three of Defendant's Districts in her area, specifically Districts 1507, 2506, and 2505 (discussed further *infra*), which are comprised of 30-35 stores in total.

26. Throughout Plaintiff's employment with Defendant, Plaintiff has been subjected to and has witnessed hostility, animosity, and disparate treatment based on age, as well as age-related discriminatory comments. By way of example:

a. McCormick referred to Plaintiff as "old" at least three separate times in her presence beginning in or about 2025, as well as when she was not present,

according to other employees, Tycia Monaco ("Monaco" – 59) and Monica Santilla ("Santilla" - 57);

b. Since at least 2025, McCormick also frequently called Monaco and Santilla "old";

c. McCormick, via security camera footage, saw Monaco slip on ice and fall on a concrete floor. Monaco required medical attention because of this fall and left the site in an ambulance, but instead of calling for help or showing concern, McCormick laughed at Monaco's injury and stated that Monaco slipped because she was "old;"

d. Plaintiff was excluded from a crucial training session on the new attendance policy/system rollout that took place while she was on a medical leave in or about the summer of 2024. Defendant did not update her on the new policy when she returned (unlike Plaintiff's younger counterparts);

e. When Plaintiff returned from medical leave in or about July of 2024, McCormick, who filled in for Plaintiff as General Manager during her leave, was vocally displeased that Plaintiff returned, screaming that she hated Plaintiff, and that she believed she would never get promoted because Plaintiff was "going to die in that store;" and

f. In or about 2022, Defendant hired a younger person, Shane Martin ("Martin," 25) at a starting salary of $99,000 as a General Manager for another Top 25 and/or A-Volume store. By contrast, in or about 2022, Plaintiff was only making about $88,000 per year despite having the same position and more experience.

27. The aforementioned acts of discrimination are only a few examples of the discriminatory and disparate treatment that Plaintiff witnessed or was personally subjected to on account of her age and is not meant to be an exhaustive list.

28. In addition, Defendant frequently preferred to hire younger employees, and even tolerated egregious misconduct from younger employees, including, by way of example (but not intended to be an exhaustive list):

a. A stylist named Mary Jane Hope ("Hope," 30's) provided free services to her sister in the store; although she was suspended and required to pay back the cost of the services, Defendant reinstated her;

b. In or about 2020, a Salon Associate named John Smith ("Smith," 40's) was paid at the rate of a district manager, despite not holding that position, because of a glitch in the computer system; although Defendant's regional managers wanted to terminate him, HR refused to do so, and he was paid the incorrect rate for more than a year before Defendant adjusted his pay to the correct rate. He was neither disciplined nor terminated for accepting overpayment;

c. In or about March 16, 2024, Smith violated protocol during an active shooter lockdown by continuing to wash a customer's hair in the front store (policy required that he move the customer to a safe backroom during an active shooter lockdown); although he put a customer's life, and his own, in danger, Defendant issued him a final write-up instead of terminating him;

d. In or about 2024, a Beauty Advisor named Ariel Gibbs ("Gibbs," 21) posted a picture of herself on Instagram in which she drew swastikas on herself, and

although Defendant was aware of this, Gibbs was never disciplined nor terminated;

e. McCormick was never disciplined for her July 2024 outburst (discussed *supra*), even though it occurred in the presence of Epps;

f. Groom, Bresnen, and Bock edited McCormick's schedule so that it appeared she arrived on time when she was in fact late; however, they were only written up approximately 7 weeks after Plaintiff's termination, and none of them were terminated;

g. In or about August of 2025, an Experience Manager, Danielle Buonnano ("Buonanno," 44) left the building unattended (a terminable offense) to go outside and smoke cigarettes; however, she was merely issued a warning; and

h. In or about July or August of 2025, Buonanno entered the worksite alone without notifying the LP Department by email (which is against Defendant's policy), and she was never disciplined/written up;

29. At all times relevant herein, Plaintiff was an excellent employee while working for Defendant, despite being subjected to the aforementioned discriminatory treatment.

30. To Plaintiff's surprise, despite her excellent performance and long tenure with Defendant, she was called into a one-on-one meeting with the District Manager of District 1507, Brian Mahan ("Mahan") on or about April 7, 2026.

31. At the aforesaid meeting, Mahan informed Plaintiff that he, Black, McGrath, and another District Manager, Tammy Orszo ("Orszo"), jointly decided to terminate Plaintiff's employment.

32. Defendant's purported reason for terminating Plaintiff was misconduct, specifically alleging that Plaintiff:

a. Excused McCormick's absence on or about March 27, 2025;

b. Clocked McCormick in at 8am instead of 8:11am on or about February 27, 2026;

c. Made over 100 adjustments to McCormick's schedule in one year; and

d. Ran to the backroom to clock McCormick in on her behalf on or about February 27, 2026.

33. Defendant did not give Plaintiff the opportunity to respond to the aforesaid allegations before terminating her.

34. Plaintiff's termination broke Defendant's standard operating procedure in numerous ways.

35. For example, upon information and belief, the process of disciplining an employee for time theft requires that the employee be interviewed with a witness, the LP manager, the manager, and an HR representative present, and the employee must also be given the opportunity to review the evidence against them.

36. No witness, LP manager, nor HR representative were present when Plaintiff was terminated, and the decision to terminate Plaintiff had already been made without giving her the opportunity to review evidence against her.

37. In addition, a male and female employee should not have been allowed to be alone together in a room, even for a disciplinary interview.

38. Following Plaintiff's termination, Defendant replaced Plaintiff with Carmella DiCarlo ("DiCarlo," 38).

39. DiCarlo was previously an Operations Manager (lower than General Manager) at the Warrington, PA store, which was neither a Top 25 nor A-Volume store; she applied for the position of Experience Manager (lower than General Manager) at the Langhorne store in or about November 2025 and was rejected for the position.

40. Upon information and belief, Defendant continues to perpetuate the aforesaid hostile work environment for older employees and continues to favor younger hires who are less qualified to replace older employees.

41. Further, the reasons Defendant provided for Plaintiff's termination are clearly discriminatory and pretextual, as:

a. Defendant treated Plaintiff in a discriminatory and demeaning manner prior to her termination;

b. Plaintiff has knee problems and is unable to run; thus, it would have been impossible that anyone had seen her "running" to the back to clock McCormick in;

c. Upon information and belief, despite being accused of time theft, Jackson was not present at Plaintiff's termination;

d. Plaintiff lacked a history of progressive discipline throughout her 19 years of employment with Defendant prior to her termination;

e. Plaintiff was never issued any warning or progressive discipline before being abruptly terminated for what would have been a first offense (if Defendant's reasoning for Plaintiff's termination is taken as true);

f. Younger employees who had committed far worse offenses than Plaintiff had been accused of, and who had a history of misconduct, were neither disciplined nor terminated for their misconduct;

g. Three other managers were also found to have clocked McCormick in early; however, unlike Plaintiff, none of them were terminated (and they are all significantly younger than Plaintiff);

h. The 100 edits made on McCormick's schedule were made by Plaintiff to organize her schedule into segments, which was one of Plaintiff's regular duties as General Manager (discussed *supra*) and certainly not cause for discipline/termination; and

i. After Plaintiff's termination, Defendant replaced her with a younger and less qualified person.

42. Plaintiff believes and therefore avers that she was terminated because of her advanced age in violation of the ADEA.

**COUNT I**
**<u>Violations of the Age Discrimination in Employment Act ("ADEA")</u>**
**([1] Age Discrimination; [2] Hostile Work Environment)**

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff is 57 years old.

45. Plaintiff was subjected to a hostile work environment because of her age through disparate treatment and discriminatory comments.

46. Plaintiff believes and therefore avers that she was terminated because of her advanced age.

47. Plaintiff asserts that Defendant's actions (discussed *supra*) were made in violation of the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering under Plaintiff's future state law claims);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: September 29, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Sheila Spenillo | : | CIVIL ACTION |
| v. | : | |
| Ulta Salon Cosmetic & Fragrance, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/29/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________________ Judge:______________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):______________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_________________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

SPENILLO, SHEILA

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

ULTA SALON COSMETIC & FRAGRANCE, INC.

County of Residence of First Listed Defendant: Will
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***: ADEA (29USC621)

Brief description of cause: Violations of the ADEA and the PHRA.

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ____ DOCKET NUMBER ____

DATE 9/29/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____